## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
KATHY E. ADAMS,                         )
                                        )
                  Ms. Adams,            )
                                        ) Civil Action No.:05CV00941(EGS)
          v.                            )
                                        ) ECF
CONDOLEEZZA RICE, in her capacity as    )
United States Secretary of State,       )
                                        )
                  Defendant.            )
_____)

### DEFENDANT'S REPLY IN SUPPORT OF
### DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

**I.    Introduction**

Plaintiff Kathy Adams sued Defendant Department of State under the Rehabilitation Act alleging disability (breast cancer) discrimination when Defendant denied her the necessary medial clearance to enter the Foreign Service.  Defendant does not dispute that Defendant initially granted Ms. Adams Class 1 Medical Clearance making her worldwide available for the Foreign Service.  Defendant, however, revoked that clearance after learning that Ms. Adams was diagnosed with breast cancer and had surgery for it.  The gravamen of Ms. Adams' Opposition is that she needs discovery to show that Defendant discriminated against her due to her disability (breast cancer).  This is a red-herring.  This case must be view through the lens of the world healthcare systems and Ms. Adams' health record in 2003, when Defendant made the decision to revoke her medical clearance.

Despite submitting voluminous evidence, Ms. Adams cannot show that, as a matter of

law, she is a disabled individual under the Rehabilitation Act.  Specifically, first, Ms. Adams

cannot show that Defendant discriminated her based on her currently alleged disability – namely,

she is substantially limited from sexual contact – because Defendant's Office of Medical

Services (MED) did not know of this disability in December 2003 when it revoked her medical

clearance.  Second, Ms. Adams cannot show that her two brief hospitalizations and an outpatient

procedure that related to her treatment for breast cancer constituted a record of disability under

the Rehabilitation Act.  Third, under the law, Defendant did not regard her as having a disability

when it revoked her the medical clearance to work as a Foreign Service officer.

Moreover, there is no dispute as to Ms. Adams' worldwide unavailability because the

majority of the overseas posts do not have adequate health service to care for someone with Ms.

Adams' condition.  In addition, Ms. Adams' requested accommodation of allowing her to travel

outside her post to obtain periodic medical care would impose undue hardship on Defendant and,

therefore, it is neither reasonable or required by law.  Finally, Ms. Adams' argument that

Defendant did not take into account her Russian language skills when it denied her request for a

waiver of the worldwide availability requirement is more properly analyzed under the

Administrative Procedure Act ("APA"), not the Rehabilitation Act.  Ms. Adams, however, does

not raise make an a APA claim here.  For these reasons, the Court should grant Defendant's

Motion to Dismiss or, in the alternative, for Summary Judgment.

## II.    Argument

### A.    Defendant Has No Knowledge of Ms. Adams's Current Alleged Disability Of Fear of Sexual Contact.

Ms. Adams claims that she qualifies as a disabled individual under the Rehabilitation Act because she is "substantially limited from sexual contact by virtue of the physical and psychological scars of her [breast] cancer." Opp. at 1, 23. Even assuming that this alleged disability is true, Defendant did not know of this disability when it denied Ms. Adams the necessary medical clearance for entry into the Foreign Service.

To hold an employer liable under the Rehabilitation Act, plaintiff must show that the "employer acted with an awareness of the disability itself." Crandall v. Paralyzed Veterans of America, 146 F.3d 894, 896-97 (D.C. Cir. 1998). Indeed, "[r]eports about which the defendant employer had absolutely no knowledge nor access prior to [acting] cannot serve as the sole evidentiary basis of establishing a prima facie case of disability discrimination." Goodman v. Potter, 413 F. Supp.2d 11, 16 (D.D.C. 2005) (noting that "Defendant may be liable under the [Rehabilitation] Act only for adverse decisions taken with knowledge of the disability."); Evans v. Davis Memorial Goodwill Indus., 133 F. Supp.2d 24, 27 (D.D.C. 2000) (noting that "[e]mployers can only be held liable for discrimination on the basis of 'known' disabilities.").

Here, Ms. Adams still has not disclosed exactly when she became psychologically impaired in her ability to engage in romantic or sexual intimacy. Significantly, absent from her voluminous submissions (including her 54-paragraph, self serving affidavit) is an assertion that she possessed this impairment in December 2003 when Defendant revoked her medical clearance. Moreover, there is no evidence that Ms. Adams notified Defendant of this alleged disability. Without more, Ms. Adams cannot now try to hold Defendant liable for disability

discrimination when it had no knowledge of her disability.

In any event, even assuming that Ms. Adams is <u>now</u> sufficiently impaired (fear of sexual contact) to qualify as a disabled individual, Defendant is not obligated to provide reasonable accommodation for this disability. <u>See</u> Def. Mot. at 13-15. Accordingly, Ms. Adams fails to establish a prima facie case of discrimination due to her disability (fear of sexual intimacy).

**B.    Ms. Adams's Evidence Does Not Show that She Has a Record of a Disability.**

Ms. Adams submits the following evidence in support of her claim that she had a record of a disability at the time she applied to the Foreign Service: (1) she was hospitalized in September 2003 for three days for her mastectomy; (2) "[f]or two to three weeks after her discharge, she was unusually fatigued, and her ability to move her right arm was impaired for several weeks;" (3) she had surgery to remove her ovaries and fallopian tubes on December 1, 2003, and was ordered to take two days of bed rest afterwards; and (4) she "missed a week of work following an outpatient procedure to reconstruct her nipple." Pl. SOF at Section II(A)(2); Pl. Opp. at 23. This is the universe of Ms. Adams' evidence showing that she has a record of a disability. As a matter of law, her evidence is not sufficient to establish that she has a record of a disability.

"It is well established that the [Rehabilitation] Act was never intended to extend to persons suffering from temporary conditions or injuries." <u>Paegle v. Dep't of the Interior</u>, 813 F. Supp. 61, 64 (D.D.C. 1993). Indeed, "[t]he impairment must 'prevent or severely restrict' the individual in the major life activity at issue and must have a permanent or long term impact." <u>Thompson v. Rice</u>, - - F. Supp.2d  - -, 2006 WL 592880, *7 (D.D.C. Mar. 13, 2006); <u>see also</u> <u>Brown v. Snow</u>, 407 F. Supp.2d 61, 65 n.8 (D.D.C. 2005); <u>Lester v. Natsios</u>, 290 F.Supp.2d 11,

22 (D.D.C. 2003) (citing 29 C.F.R. § 1630.2(j)(2)).

In Lester, the court found that a plaintiff who suffered from hypertension for less than one year before it came under control through medication was disabled for that period.  Lester, at 25-26.  Similarly, in Brown v. Snow, the court found that the plaintiff was not disabled because plaintiff only had temporary physical limitations because of a lower back pain.  407 F.Supp.2d 61, 15 n.8 (D.D.C. 2005).  See also Paegle,813 F. Supp. at 64-65 (finding a Degenerative Disk Syndrome that limited plaintiff's activities for about six months was not a disability because it was a temporary condition).

Here, whatever disability that Ms. Adams had at the time when she was diagnosed with breast cancer and had surgery for it was only temporary.  Specifically, she claims that she could not work for about three weeks following her mastectomy and reconstructive surgery in September 2003.  Adams Decl. at ¶ 10, 12 (Pl. Exh. 19); Pl. Opp. at 23.  Apparently, this was only a temporary condition.  In fact, two months after her surgery, in November 2003, Dr. Mark O'Rourke (Ms. Adams' own doctor) stated that "[s]he is cancer free and is able to undertake a full schedule of work, travel, and vigorous sports."  O'Rourke Letter (Gov. Exh. 9).[1]  Moreover, Ms. Adams concedes that she is currently "fit as a fiddle and cancer free."  Adams Decl. at ¶ 47. There is no evidence that she is substantially limited in her daily activities in any way.  Given these circumstances, Ms. Adams does not have a record of a disability under the Rehabilitation Act.

Ms. Adams then argues that she has a record of a disability because she was hospitalized.

---

[1]     Defendant's unredacted exhibits can be found under Docket No.6.

Pl. Opp. 23-24.  In support of this contention, Ms. Adams cited to School Bd. of Nassau County v. Arline, 480 U.S. 273 (1987); Berk v. Bates Adverstising USA, Inc., 25 F. Supp.2d 265 (S.D.N.Y. 1998); Mark v. The Burke Rehab. Hospital, 1997 WL 189124 (S.D.N.Y. Apr. 17, 1997).  Ms. Adams misconstrues these cases.

As a preliminary matter, Ms. Adams cited Berk out of context to argue that mere hospitalization alone is sufficient to establish a record of a disability.  Pl. Opp. at 24.  Contrary to Ms. Adams' assertion, in Berk, the court actually stated, "Given the Second Circuit's analysis in Coldwell, I no longer give Berk's hospitalization and convalescence controlling weight on the existence of a disability under the ADA."  25 F. Supp.2d at 267 (citing Coldwell v. Suffolk County Police Dept., 158 F.3d 635, 645 (2d Cir. 1998)).  Second, the court in  Mark held that hospitalization alone was sufficient to show a record of a disability; however, that holding was effectively reversed by the Second Circuit's ruling in Coldwell.  In Coldwell, the Second Circuit adopted the Fifth Circuit's construction of Arline and stated,

> The fact of [plaintiff's] hospitalization does not establish a record of a substantially limiting impairment, even under Arline.  As the Fifth Circuit recently observed, Arline cannot be construed to obviate the requirement, explicit in the ADA and its implementing regulations, that purported conditions be examined to ascertain whether a specific condition substantially limited a major life activity.  The ADA requires an individualized inquiry beyond the mere existence of a hospital stay. . . . [The contrary reading of Arline] would work a presumption that any condition requiring temporary hospitalization is disabling – a presumption that runs counter to the very goal of the ADA.

158 F.3d at 645-46 (citing to Burch v. Coca-Cola Co., 119 F.3d 305, 317 (5th Cir. 1997)) (emphasis in original).  Under Coldwell, Ms. Adams' reliance on Arline is misplaced because her hospitalization alone is not sufficient to establish a record of a disability.

In short, there must be an "individualized inquiry beyond existence of a hospital stay."

Coldwell, 158 F.3d at 646.  An individualized inquiry into Ms. Adams' circumstances reveal that her disability (if she had one at all) was a temporary condition that did not have a permanent or long-term impact on her daily activities.  See Adams Decl. at ¶ 47 (Pl. Ex. 19)  (stating that she is "fit as a fiddle and cancer free"); O'Rourke Letter (Def. Ex. 9) (two months after her surgery, Dr. O'Rourke stated that Ms. Adams "is cancer free and is able to undertake a full schedule of work, travel, and vigorous sports.").  Accordingly, Ms. Adams does not have a record of a disability because her condition was only temporary.

###### C.    Defendant Did Not Regard Ms. Adams as Disabled When It Did Not Give Her Medical Clearance for the Foreign Service.

Ms. Adams argues that Defendant regarded her as having a disability that substantially limited her major life activity of working  when Defendant withdrew her medial clearance and denied her entry into the Foreign Service.  Pl. Opp. at 24-32.  This is a legally untenable assertion. Working for the Foreign Service is not a major life activity.  See Thompson v. Rice, - - F. Supp.2d  - -, 2006 WL 592880, *7 (D.D.C. Mar. 13, 2006).

In Thompson, plaintiff sued the Department of State (the same defendant as in this case) under the Rehabilitation Act claiming that the State Department regarded her as having a disability when it revoked her medical clearance that prevented her from working overseas. 2006 WL 592880, at * 11.  The court rejected this assertion and held that "working abroad is not a major life activity."  Id.  The court went on to explain that,

> [P]laintiff's restricted medical clearance does not show that defendant regarded plaintiff as disabled because it reveals nothing about whether defendant believed that plaintiff had an impairment that substantially limited her in a major life activity. As defendant points out, the medical clearance system is used to determine whether a person may be appropriately posted in a foreign country that has limited medical facilities, recognizing that some medical conditions could be exacerbated by overseas postings or that certain locations may not have adequate

> facilities to treat an employee's condition. See Def. Reply Mem. at 24; Def. Ex. 19
> (Foreign Affairs Manual, volume 3, § 1931). That system does not indicate
> whether a person is substantially limited in a major life activity, and thus cannot
> be characterized as automatically qualifying persons as being disabled under the
> "regarded as" provision of the Rehabilitation Act. See EEOC v. J.B. Hunt
> Transp., Inc., 321 F.3d 69, 75 (2d Cir.2003) (holding that employer's policy of
> screening out applicants taking medications that could impair driving ability did
> not "regard" applicants as disabled because "driving freight-carrying
> tractor-trailer trucks over long distances for extended periods of time" did not
> constitute a broad range or class of jobs).  Indeed, the broad interpretation
> advocated by plaintiff would mean all State Department employees with limited
> medical clearances are disabled, a result in conflict with the intent of the
> Rehabilitation Act. See Toyota, 534 U.S. at 197-98, 122 S.Ct. 681. Therefore, the
> Court finds that defendant has not regarded plaintiff as disabled by restricting her
> medical clearance and thereby limiting her ability to serve in some overseas posts.

Id.  The holding in Thompson on the "regarded as" issue applies squarely to this case.  As the

court in Thompson pointed out, the mere fact that Defendant revoked Ms. Adams' Class 1

Medical Clearance upon learning of her breast cancer diagnosis does not mean that Defendant

regarded Ms. Adams as having a disability.  See Def. Mot. at 16-21 (further explaining that,

under the law, Defendant did not regard Ms. Adams as having a disability when it denied her

entry into the Foreign Service because she did not have the necessary medical clearance).

Accordingly, Ms. Adams simply fails to show that Defendant regarded her as having a disability.

    In further support of her "regarded as" contention, Ms. Adams asserts that she is

substantially limited in working for 50 federal agencies because Defendant did not give her the

necessary medical clearance.  Pl. Opp. at 17-20, 32-33.  Ms. Adams' argument lacks merit for

two reasons.  First, to establish that her disability substantially limits her ability to work, Ms.

Adams must "allege and prove that in [her] particular circumstances . . .[her] impairment

prevents [her] from performing a substantial class or broad range of jobs otherwise available to

[her].  Thompson, 2006 WL 592880, at * 7 (internal quotations omitted).  "To be substantially

limited in working, one must be precluded from more than one type of job, a specialized job, or a particular job of choice." Id. (citing Sutton, 527 U.S. at 492). "One of the key factors in defining the substantial class or broad range of jobs is the employee's training, knowledge, skills, or abilities." Id. at * 8 (internal quotation omitted).

Here, the evidence shows that Ms. Adams is a lawyer and worked as a corporate trainer and management consultant. See Ms. Adams' Statement of Interest (Def. Exh. 16). Therefore, Ms. Adams' lack of medical clearance only precludes her from working abroad for certain federal agencies but it does not prevent her from using her legal skills or her experience as a corporate trainer and management consultant to work in a wide variety of jobs, both in the United States and abroad. In fact, Ms. Adams makes no attempt to argue that she has been excluded from working as a lawyer, a corporate trainer, or a management consultant for the Department of State, or for any of the 50 federal agencies that she identified.

Second, it is simply inaccurate that Defendant's revocation of Ms. Adams' Class 1 Medical Clearance prevents her from working for these 50 federal agencies. See Supplemental Declaration of Laurence Brown ("Supp. Brown Decl.") at ¶ 2 (Reply Exh. A). Specifically, there are only five agencies authorized by the Foreign Service Act to utilize the Foreign Service personnel system: (1) the Department of State, (2) the U.S. Agency for International Development, (3) the U.S. Department of Commerce, (4) the U.S. Department of Agriculture, and (5) the Broadcasting Board of Governors. See 22 U.S.C. § 3922. These are the only five agencies that generally require worldwide availability among new entrants, this requirement applies only to Foreign Service hires, and it is a requirement rooted in the statutory requirements and Congressional intent of the Foreign Service Act of 1980. See Taylor v. Rice, 2005 WL

913221, * 1-2 (D.D.C. Apr. 20, 2005); <u>Local 1812 v. Department of State</u>, 662 F. Supp. 50, 52

(D.D.C. 1987). The State Department's Office of Medical Services ("MED") does not set hiring

standards for these five agencies or any other government agencies. Supp. Brown Decl. at ¶ 2.

MED simply seeks to ensure that government employees who are posted overseas and who will

be using MED's health care system are "cleared" for the post to which they are assigned. <u>See</u>

Suppl. Brown Decl. at ¶ 8. Thus, if a non-Foreign Service government employee or contractor

needs a MED clearance, MED will usually clear that employee for a particular post, rather than

engaging in an unnecessary inquiry as to whether the employee can be assigned anywhere

worldwide. <u>See</u> Supp. Brown Decl. at ¶ 2. Therefore, Defendant's denial of the necessary

medical clearance (through MED) does not necessarily prevent Ms. Adams from working in

specific overseas positions for these 50 federal agencies. <u>Id</u>.

> **D.  Ms. Adams' Dispute Over Defendant's Finding Is Not Material as to Prevent Summary Judgment.**

Ms. Adams disputes Defendant's finding (through MED) that she was not worldwide

available in several respects. First, she insists that she would not need a surgeon or oncologist to

perform her semi-annual breast exam, but only a "primary care physician or nurse-practitioner."

Pl. SOF Section II(B)(1). Second, relying on the "post reports" found on Defendant's website,

Ms. Adams claims that discovery would reveal that she could obtain the necessary medical

attention in any overseas post. <u>Id</u>. at 11-13. Finally, she disputes that she would at be a

heightened risk of medical evacuation from an overseas post if she developed complications that

could not be treated at that post. <u>Id</u>. at 12. However, in making these assertions, Ms. Adams

focuses primarily on her current medical situation rather than the situation presented to

Defendant in October and December 2003 – when Defendant revoked her medical clearance.

First, Ms. Adams' insistence that she does not need to be examined by a specialist, as long as she had access to a qualified physician or nurse practitioner who could conduct semi-annual breast examinations, is not a material factual dispute.  See Pl. SOF Section II(B)(1). Even assuming Ms. Adams' assertion was true, this would not have rendered Ms. Adams worldwide available because there are not qualified physicians and/or nurse practitioners available worldwide to perform the necessary examination.  See Supp. Brown Decl. at ¶ 6.  In fact, in many locations where State Department Foreign Service personnel are posted, they are entirely dependent upon a locally-hired nurse who is unlikely to have the necessary training to conduct an adequate breast examination.  Supp. Brown Decl. at ¶ 6.

At most, adequately trained general practitioners and nurse practitioners are currently available at 85% of posts worldwide, and the percentage was likely lower in December 2003.  Id. While 85% may sound like a more palatable figure than 53% to Ms. Adams, it still does not meet the standard for worldwide availability.  Accord Taylor, 2005 WL 913221, at *12 and n.10 (noting that the dispute between the plaintiff and defendant over the exact percentage of posts at which the plaintiff could serve was not material, since even accepting plaintiff's more generous figures, plaintiff still was not worldwide available or even reasonably so).

Second, Ms. Adams' analysis of various "post reports" she found on the Department's website does not give rise to a genuine dispute of a material fact.  See, e.g., Nail v. England, 311 F. Supp.2d 116, 121 (D.D.C. 2004) (noting that "not all alleged factual disputes represent genuine issues of material which may only be resolved by jury.  Material facts are those that might affect the outcome of the suit under governing law.").  Ms. Adams claims that according to the "post reports," there are competent medical services at 98% of the overseas posts that can

provide her with the needed care.  Pl. Opp. at 33-36.  Therefore, she could perform the essential function of a Foreign Service officer – namely, being worldwide available.  This is another red-herring.

"Post reports" are compiled by "non-medical personnel for more general use and not for medical practitioners."  Supp. Brown Decl. at ¶ 5.  Instead, MED relies upon the "Post Capabilities Database," which is created by and for medical professionals and contains not only a listing of all available medical resources, but a rating system that shows how these medical resources compare to U.S. standards of care.  Brown Decl.  at ¶ 9 (Def. Exh. 1).  Therefore, the "post reports" are not material facts as they are not relied upon by MED.  In that vein, Ms. Adams' reliance on inaccurate information cannot create a genuine dispute to defeat summary judgment.

Finally, Ms. Adams' insistence that she would not have been at any heightened risk of medical evacuation had she been posted overseas is based on 2005 evidence, not available to Defendant in December 2003.   Specifically, Ms. Adams falls repeatedly into the trap of describing her <u>current</u> medical status, which is irrelevant to whether Defendant discriminated against her three years ago.  <u>See</u>, <u>e.g.</u>, Pl. Opp. at 33 ("Ms. Adams <u>needs</u> no accommodation to perform the duties of a foreign service officer") (emphasis added); Plaintiff SOF a p. 10 ("Ms. Adams <u>does</u> <u>not</u> require specialized medical care, she does not have to remain in the United States to receive the minimal medical services she requires...") (citing to Dr. Blackwell's January 18, 2005 Letter) (Pl. Exh. 5).

Under the law, information that defendant had no knowledge about the disability cannot be used to as evidence to establish a prima facie case of disability discrimination.  <u>See</u> <u>Goodman</u>,

412 F. Supp.2d at 16 (stating that "[r]eports about which the defendant employer had absolutely no knowledge nor access prior to [acting] cannot serve as the sole evidentiary basis of establishing an element of a prima facie case of disability discrimination."). Therefore, in determining whether Defendant acted with discriminatory animus, Ms. Adams' health status must be viewed in light of what information MED had in December 2003, four months after her diagnosis with breast cancer and three months after her mastectomy. At that time, MED viewed her medical condition as having "a higher risk both of recurrence in the wound and in her other breast that warranted careful monitoring by someone with more of a background in cancer treatment than the average general practitioner or nurse practitioner. See Supp. Brown Decl. at ¶ 3. Ms. Adams' relatively relaxed attitude towards the possibility of a cancer recurrence now is understandable because she has not experienced a recurrence since her original diagnosis in August 2003. However, it is not evidence of discrimination against her for MED to have displayed a more cautious attitude in December 2003, when Defendant revoked her medical clearance.

###### E.    Ms. Adams Is Not Entitled to the Requested Accommodation.

Ms. Adams states that she "needs no accommodation to perform the duties of a foreign service officer." Pl. Opp. at 33. However, she admits freely that, since her diagnosis with breast cancer in 2003, she has needed semi-annual breast examinations. See O'Rourke Letter (Def. Ex. 9) (stating that Ms. Adams needs breast examination every 6 months); O'Rourke 2005 Decl. (Pl. Exh. 2) (stating same). Given that such examinations are not available worldwide (as explained above), in order to enter the Foreign Service in 2003, Defendant would have to exempt Ms. Adams from serving at posts that did not meet her medical needs, or treat her differently from

other Foreign Service employees and allow her to travel outside her post of assignment for routine medical care.  This is a request for reasonable accommodation, no matter how fervently Ms. Adams insists that it is not.  <u>See</u> 29 C.F.R. § 1630.2(o)(ii)(EEOC regulations defining "reasonable accommodation" as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed...").  Moreover, it is an accommodation request that imposes undue hardship on Defendant and, therefore, it is neither reasonable nor required by law.  <u>See</u> Taylor, 2005 WL 913221, at * 14 (rejecting plaintiff's requested accommodation as unreasonable as it contravenes the State Department's policies prohibiting Foreign Service employees from traveling for routine medical care); Def. Mot. at 24-32 (discussing same).

**F.**    **Ms. Adams' Dispute About Defendant's Denial of Her Request for a Waiver of the Worldwide Availability Requirement is Not a Rehabilitation Act Claim.**

Ms. Adams argues that Defendant failed to follow agency guidelines in denying her request for a waiver of the worldwide availability requirement pursuant to 22 C.F.R. § 11.1(e)(5) and 3 FAM §1930.  Pl. Opp. at 16-17.  Specifically, Ms. Adams argues that Defendant failed to give due consideration to her Russian language skills and did not consider the "temporary nature of her restriction."  <u>Id</u>. at 16-17, 26.

Ms. Adams' contention is not a proper Rehabilitation Act claim; rather, it is more appropriately analyzed under the Administrative Procedure Act.  As explained in Defendant's Motion, the Employment Review Committee (ERC) decides whether to grant waivers of the worldwide availability requirement.  Def. Mot. at 6-7; <u>See</u> <u>also</u> <u>Taylor</u>, <u>supra</u>, at * 4 (discussing ERC's waiver procedure).  Its decision is independent of the medical clearance process.  Def.

-14-

Mot. at 6-7.  ERC cannot revisit or second-guess MED's determination as to whether a person is medically  worldwide available.  <u>Taylor</u>, supra, at * 4.  "Rather, the issue before the ERC is whether the candidate possesses special skills for which the Foreign Service has compelling need that could outweigh any limitations on the candidate's worldwide availability."  <u>Taylor</u>, <u>supra</u>, at * 4.

Therefore, if Ms. Adams believes that Defendant's ERC did not adequately take her Russian skills into account or it failed to properly follow certain guidelines, the proper legal remedy is for her to bring a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., to determine whether Defendant acted in a "wholly arbitrary or capricious manner." <u>See</u>, <u>e.g.</u>, <u>Crane v. Doyle</u>, 615 F.Supp. 156 (D.D.C. 1985)(two claims brought in one case pursuant to both the Rehabilitation Act and the APA).  In short, Ms. Adams' allegations against the ERC are not relevant to her Rehabilitation Act-based claim – namely, that Defendant discriminated against her due to her disability.  In any event, Ms. Adams has not established that Defendant acted in a "wholly arbitrary or capricious manner" when it denied her waiver request.  Accordingly, Defendant's dispositive motion should be granted on this issue.

**III.    Conclusion**

For the reasons stated herein and those presented in Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, the Court should grant Defendant's Motion and dismiss this case with prejudice.

Dated:  April 24, 2006.                              Respectfully Submitted,

    /s/   Kenneth L. Wainstein
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney


    /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


    /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant


OF COUNSEL:
Lara Ballard, Esq.
U.S. Department of State

-16-

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KATHY E. ADAMS,                    )
                                    )
                Ms. Adams,       )
                                    ) Civil Action No.:05CV00941(EGS)
                     v.               )
                                    ) ECF
CONDOLEEZZA RICE, in her capacity as   )
United States Secretary of State,         )
                                    )
               Defendant.       )
_____)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## STATEMENT OF GENUINE ISSUES

        Pursuant to Local Rules 7(h) and 56.1, Defendant Department of State hereby responds to

Plaintiff Kathy Adams' Statement of Genuine Issues and replies to Plaintiff's responses to

Defendant's Statement of Material Facts Not in Genuine Dispute.

**A.**     **Plaintiff's Statement of Material Facts ("SOF")**

        1.        **Plaintiff's SOF No. 1 (Section II(A)(1))**: Defendant does not dispute that Ms.

Adams currently has a deep-rooted fear that prospective suitors will reject her due to her loss of

a breast.  However, there is no evidence that Defendant had knowledge of this alleged disability

when Defendant revoked her medical clearance in December 2003.  Accordingly, Defendant

cannot be held liable for a disability for which it had no knowledge.  See Goodman v. Potter, 413

F. Supp.2d 11, 16 (D.D.C. 2005) (noting that "Defendant may be liable under the

[Rehabilitation] Act only for adverse decisions taken with knowledge of the disability.")

        2.        Plaintiff's SOF No. 2 (Section II(A)(2)): Not disputed.

3.      Plaintiff's SOF No. 3 (Section II(A)(3)): Not material.

4.      Plaintiff SOF N. 4(Section II(B)(1)): This statement is not material as Ms. Adams presents 2005 evidence (i.e. the O'Rourke 2005 Declaration and Blackwell's December 2005 letter) to claim that she only needs a primary care physician or a nurse practitioner.  <u>See</u> Pl. Exh. 2 and 5.  The decision to revoke Ms. Adams' medical clearance was made in December 2003, only four months after her diagnosis for breast cancer and three months after her mastectomy. Supp. Brown Decl. at ¶ 3.

5.      Plaintiff's SOF No. 5 (Section II(B)(2)): This statement is not material as Defendant's Office of Medical Services ("MED") did not rely upon the "post reports."  Rather, MED relies on its "Post Capabilities Database."  Supp. Brown Decl. at ¶ 6.  Ms. Adams mistakenly relies upon the "post reports."

**B.      Reply to Plaintiff's Responses to Defendant's SOF.**

1.      Defendant SOF No. 3: Plaintiff disputes this SOF, but it is a dispute of form over substance.  The underlying "undisputed" fact remains that Ms. Adams did not receive the necessary Class 1 Medical Clearance to enter the Foreign Service.  It is not material whether Defendant initially granted her the clearance but subsequently revoked it after learning of her breast cancer condition.

2.      Defendant SOF No. 4: It is unclear how Ms. Adams disputes this Statement of Fact, which basically states that she needs follow up examinations for up to five years.  Her own doctors confirmed the need for follow up examinations.  <u>See</u> O'Rouke November 2003 Letter (Def. Exh. 9); O'Rourke 2005 Declaration (Pl. Exh. 2); and Blackwell December 2005 Letter (Pl. Exh. 5).

3.      Defendant SOF No. 5: Defendant mistakenly stated that Ms. Adams needed "physical examination." Defendant now clarifies that Ms. Adams needed "breast examinations" for follow up care for her breast cancer condition. Given this clarification, there is no longer a dispute over this fact.

4.      Defendant SOF No. 6: Citing to a letter from Dr. O'Rourke (Ms. Adams' doctor), Defendant states that Ms. Adams was taking tamoxifen in December 2003. See O'Rourke December 2003 Letter (Def. Exh. 9). At present, citing to Dr. O'Rourke's 2005 Declaration, Ms. Adams is disputing this statement claiming that she no longer takes tamoxifen. See Pl. Exh. 2. Defendant's statement and Ms. Adams' statement are not mutually exclusive and not in dispute because they are accurate in 2003 and in 2005, respectively.

5.      Defendant SOF No. 7. In disputing Defendant's SOF No. 7, Ms. Adams presents 2005 evidence (i.e. the O'Rourke 2005 Declaration and Blackwell's December 2005 letter) to claim that a delay of up to six months in any examination would not present a risk to her health. See Pl. Exh. 2 and 5. Her doctors' assessment was based on her health condition in 2005. Id. Ms. Adams, however, has not presented any evidence to dispute that in December 2003 – four month after her cancer diagnosis and three months after her surgery – it was crucial for her to monitor her condition regularly.

6.      Defendant's SOF No. 8: Defendant agrees with Ms. Adams that Defendant's SOF No. 8 was incorrect. Defendant now confirms that it initially granted Ms. Adams Class 1 Medical Clearance. However, after learning of her breast cancer condition, it revoked that clearance before Ms. Adams was officially appointed as a Foreign Service officer.

7.      Defendant's SOF No. 9: Ms. Adams' dispute of Defendant's SOF NO. 9 is not a

-3-

genuine dispute of a material fact as Defendant's Office of Medical Services ("MED") did not rely upon the "post reports."  Rather, MED relies on its "Post Capabilities Database."  Supp. Brown Decl. at ¶ 6.  Ms. Adams mistakenly relies upon the "post reports."

8.    Defendant's SOF No. 10: Ms. Adams contradicts herself here.  She states that she "dispute[s]" Defendant's SOF No. 10.  However, in the very next sentence, Ms. Adams states, "Ms. Adams does not dispute defendant's statement that its regulations prohibit overseas travel for routine medical appointments."  Accordingly, there is no dispute of Defendant's SOF No. 10.

9.    Defendant's SOF No. 11: Ms. Adams' dispute is not a genuine dispute of a material fact because Defendant's Office of Medical Services ("MED") did not rely upon the "post reports."  Rather, MED relies on its "Post Capabilities Database."  Supp. Brown Decl. at ¶ 6.  Ms. Adams mistakenly relies upon the "post reports."

10.    Defendant's SOF No. 12: Ms. Adams does not dispute that worldwide availability – an essential function of the Foreign Service – is "rigorously enforced with respect to applicants for the Foreign Service."  Ms. Adams asserts that this "worldwide availability" is not enforced for in-service Foreign Service officers.  Defendant does not dispute this assertion.  See Barth v. Gelb, 2 F.3d 1180, 1189 (D.C. Cir. 19993) (rejecting the argument that an agency's medical accommodation of current Foreign Service employees requires it to extend the same accommodation to Foreign Service applicants).  However, Ms. Adams is not an in-service Foreign Service officer and, therefore, her contention is simply not material here.

Dated: April 24, 2006.                     Respectfully Submitted,


   /s/  Kenneth L. Wainstein
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney


   /s/  Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


   /s/  John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant