UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KATHY E. ADAMS,  )  <br>  ) <br>  Plaintiff,  ) <br>  ) Civil Action No. 05-941 (EGS) <br>  v.  ) <br>  ) <br> CONDOLEEZZA RICE, Secretary ) <br> of State,  ) <br>  ) <br>  Defendant.  ) <br>  ) | |

**MEMORANDUM OPINION**

Plaintiff Kathy Adams brings this action under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, to challenge her rejection for a position with the State Department on the grounds that it was disability discrimination. Plaintiff had passed the necessary exams to enter the Foreign Service, but was denied medical clearance, and therefore the position, after she was diagnosed and treated for breast cancer. Currently pending before the Court is defendant's motion to dismiss or, in the alternative, for summary judgment, which argues that plaintiff cannot make out a prima facie case for disability discrimination. Upon consideration of the motion, the response and reply thereto, the arguments made at the hearing on March 20, 2007, the applicable law, and the entire record, the Court determines that plaintiff is unable to demonstrate that she is disabled within

the definition of the Rehabilitation Act. Therefore, for the reasons stated herein, defendant's motion to dismiss or, in the alternative, for summary judgment is **GRANTED**.

## BACKGROUND

**I. Foreign Service Hiring Process**

The United States Foreign Service requires its officers to be "available to serve in assignments throughout the world." 22 U.S.C. § 3901(a)(4). The Foreign Service has approximately 250 offices worldwide, 65% of which are considered "hardship" posts due to factors such as climate and local health care quality. *See Taylor v. Rice*, 451 F.3d 898, 900 (D.C. Cir. 2006). Because serving in a hardship post is challenging, the State Department seeks to equalize employee service at these posts, and frequently assigns junior Foreign Service Officers to hardship posts during their first four years of service. *Id.*

Candidates for the Foreign Service must pass rigorous written and oral examinations. *Id.* Those who pass are placed on the List of Eligible Hires, from which candidates are drawn in rank order to receive conditional offers of employment. *Id.* The offers are conditional because they are subject to satisfactory completion of security, medical, and overall suitability reviews. *Id.* At issue in this case is the medical review process.

"The State Department's Foreign Affairs Manual requires that 'all candidates who have received conditional offers of

employment in the Foreign Service . . . receive a medical examination and be issued a medical clearance.'" *Id.* at 901 (citing 3 Dep't of State Foreign Affairs Manual § 1931.1(b)). The medical examinations are conducted by the Office of Medical Services ("MED"). After the medical exam, Class 1 clearances are issued to examinees who have no identifiable medical conditions that would limit assignment abroad, i.e., they are "worldwide available." *Id.* Class 2 clearances are issued to examinees who have medical conditions that would partially limit the locations where they could be safely posted. *See id.* Class 5 clearances are issued to those who cannot be safely posted outside the United States. *Id.*

New candidates for Foreign Service positions must receive Class 1 clearance in order to be further considered. *Id.* Candidates not receiving Class 1 clearances are automatically issued Class 5 clearances and may request an administrative waiver of the medical standards for employment. *Id.* The Class 2 classification is thus only used for existing employees or new applicants who are granted an administrative waiver. *See id.* at 901 n.4. Medical waivers are rare, and decided on the basis of factors such as the extent of worldwide availably and extraordinary skills possessed by the applicant. *Id.* at 901; *see also* Decl. of Bruce Cole, Def.'s Ex. 12.

**II. History of Plaintiff's Case**

Plaintiff applied to become a Foreign Service Officer and had passed both the written and oral examinations by April 2003. Decl. of Kathy Adams, Pl.'s Ex. 19, ¶¶ 2-3. She initially received a Class 1 medical clearance from MED on July 10, 2003. *Id.* ¶ 8. In mid-August of 2003, however, she was diagnosed with Stage I breast cancer. *Id.* ¶ 9. Plaintiff underwent a mastectomy to treat her cancer in September 2003, and took approximately four weeks to recover from the surgery. *Id.* ¶¶ 10-12. During that month, plaintiff was placed on the register for consular officers awaiting appointment into the Foreign Service. *See* September 25, 2003 Letter from State Dep't, Def.'s Ex. 7. Plaintiff was informed on October 2 that she ranked seventh out of 200 consular candidates, and thus would almost certainly be appointed to the Foreign Service in January 2004. Adams Decl. ¶ 15. Plaintiff reported her medical developments to defendant on October 3, 2003. *Id.* ¶ 22.

MED personnel, upon learning this new information, immediately asked plaintiff a number of questions about her diagnosis, including a question about the "[t]reatment plan detailing the type and frequency of follow-up care/monitoring needed." October 10, 2003 Email from Rebecca Forsman to Pl., Def.'s Ex. 15. Plaintiff's treating physician reported that plaintiff had been successfully treated for early stage breast

4

cancer with an excellent prognosis. November 19, 2003 Letter from Dr. Mark O'Rourke, Def.'s Ex. 9. He specifically stated that plaintiff was "cancer-free," "is able to undertake a full schedule of work, travel, and vigorous sports," and "has no job limitations whatsoever." *Id.* He stated that her future treatment would consist of an annual mammogram and a semiannual breast examination by a "physician" for five years following surgery. *Id.* Dr. O'Rourke later clarified that plaintiff's semiannual examination could be performed by any primacy care provider, either a physician or nurse-practitioner, and did not require the service of a surgeon or oncologist. January 12, 2004 Letter from Dr. O'Rourke, Pl.'s Ex. 1. Another oncologist that treated Adams subsequently concurred in this assessment. January 18, 2005 Letter from Dr. Kimberly Blackwell, Pl.'s Ex 5.

As a consequence of plaintiff's treatment plan, MED issued a Class 5 clearance to plaintiff. *See* December 12, 2003 Letter from State Dep't, Def.'s Ex. 11. MED's assessment was that only 53% of all Foreign Service posts had the professional and technical support required for her follow-up care. *See* Mem. for Employment Review Comm., Def.'s Ex. 13. MED's calculation was based on the finding that plaintiff's semiannual physical examinations had to be provided by a surgeon or oncologist. *See id.; see also* Decl. of Laurence Brown, Def.'s Ex. 1, ¶ 18 (stating that the 53% figure was derived from the percentage of

5

posts that had surgeons and/or oncologists). Plaintiff applied for a waiver of the worldwide availability requirement but that request was denied. *See* March 29, 2004 Letter from State Dep't, Def.'s Ex. 14. As a result of plaintiff's Class 5 medical clearance, she was not cleared for assignment abroad and was denied entry into the Foreign Service. *See id.*

Adams filed her initial complaint in this Court on May 10 2005, claiming that defendant violated the Rehabilitation Act by denying her employment on the basis of a disability. In response to defendant's initial motion to dismiss, plaintiff amended her complaint, adding allegations about the physical and psychological impairments resulting from her cancer treatment. Specifically, plaintiff states that she is currently physically free of cancer, but claims to suffer physically and psychologically from her breast cancer treatment, which limits her in the major life activity of sexual contact and romantic intimacy. Am. Compl. ¶ 12; *see* Adams Decl. ¶¶ 47-51. Defendant then filed the instant motion to dismiss or, in the alternative, for summary judgment. No discovery has taken place, but both parties have submitted declarations and other forms of documentary evidence to support their positions.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should be granted when it appears "beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Sparrow v. United Air Lines*, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) (citations omitted).  Because both parties have submitted and relied upon materials outside the pleadings, however, defendant's motion will be treated as a summary judgment motion under Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 12(b).

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

## ANALYSIS

Defendant argues that plaintiff cannot establish a prima facie case of disability discrimination.  To establish a prima

7

facie case of employment discrimination under the Rehabilitation Act based on disparate treatment, a plaintiff must show, by a preponderance of the evidence, that: (1) she has a disability under the Act's definition; (2) she was qualified for the position, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc); *Thompson v. Rice*, 422 F. Supp. 2d 158, 166 (D.D.C. 2006).  A person is disabled under the Rehabilitation Act if she "has a physical or mental impairment which substantially limits one or more of [her] major life activities; has a record of such an impairment; or is regarded as having such an impairment."  29 U.S.C. § 705(20)(B); *Thompson*, 422 F. Supp. 2d at 166.[1]  The dispositive issue in this case is whether plaintiff is disabled under this three-prong definition.

**I. Physical or Mental Impairment**

Plaintiff initially argues that her breast cancer itself is a physical impairment that rendered her disabled under the Act. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss or for Summ. J. at 23. Plaintiff claims that this impairment substantially limits her in

---

[1] The same definition of "disability" is utilized in the Americans with Disabilities Act of 1990 ("ADA"), and thus cases interpreting either statute are applicable in defining the term "disability."  *See* 29 U.S.C. § 794(d); 42 U.S.C. § 12102(2)(A); *Thompson*, 422 F. Supp. 2d at 166 n.6.

the major life activity of sexual contact.  *Id.* (citing Adams Decl. ¶ 49).

This argument fails for two reasons.  First, plaintiff's breast cancer was not a long-term impairment.  An impairment must have a permanent or long-term impact to qualify as a disability under the Act.  *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002); *Thompson*, 422 F. Supp. 2d at 170. Plaintiff was quickly treated for her cancer in September 2003, recovered during several weeks after the surgery, and returned to work one month after surgery.  *See* Adams Decl. ¶ 12.  By November 2003, plaintiff's physician declared her to be cancer-free and fully recovered.  Therefore, while plaintiff's cancer resulted in her being limited while recovering from surgery, the cancer itself was not a long-term physical impairment, and thus not a disability.[2]

Second, defendant did not make its revised medical clearance decision until December 2003, after receiving and considering Dr. O'Rourke's report that stated that plaintiff had fully recovered from her cancer.  Thus, plaintiff's cancer itself was not an impairment by the time the challenged employment actions

---

[2] Plaintiff in some sense was still impaired following her recovery in that her bout with cancer required heightened follow-up care.  Plaintiff has not argued, however, that the lasting risk of cancer recurrence is an impairment that qualifies as a disability.  Had the argument been made, there is no evidence that such an impairment could be shown to substantially limit a major life activity.

subsequently took place and therefore cannot be the grounds for a discrimination claim. *See Thompson*, 422 F. Supp. 2d at 168 (rejecting claim based on plaintiff's brain hemorrhage because it was no longer an impairment by the time the challenged employment actions took place).

Plaintiff's amended complaint can also be construed as alleging that plaintiff's breast cancer treatment, as opposed to the cancer itself, is a physical impairment, or that the surgical treatment caused a mental impairment, and that such impairment limits plaintiff in the major life activity of sexual contact. *See* Am. Compl. ¶ 12. Construed in this fashion though, plaintiff cannot demonstrate that defendant denied her employment on the basis of this disability.

In order for an adverse action to have been made "because of" an employee's disability, the employer must have acted with awareness of the disability. *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 897 (D.C. Cir. 1998); *Thompson*, 422 F. Supp. 2d at 178. There is no evidence, nor has plaintiff even alleged, that defendant was aware of any mental impairment of the plaintiff in the period in which it made the challenged employment decision. Nor is there any evidence that defendant made its employment decision on the basis of the surgical treatment plaintiff underwent to treat her cancer. Rather, all evidence shows that the decision was based solely on plaintiff's

need for follow-up care.  *See* Brown Decl.; Mem. for Employment Review Comm.; Adams Decl. ¶ 31.

Plaintiff counters that as long as defendant knew of plaintiff's breast cancer and made its decision "because of her breast cancer," defendant can be held liable even if it was not aware of how the cancer substantially limited a major life activity of the plaintiff.  Pl.'s Opp. to Def.'s Mot. at 36-37.  Plaintiff analogizes this situation to *Bragdon v. Abbott*, 524 U.S. 624 (1998), where the Supreme Court held that HIV was a disability under the ADA without requiring that the defendant knew how the plaintiff in that case was substantially limited in the activity of reproduction.  *See id.* at 639-41.

The crucial distinction between this case and *Bragdon*, however, is that this defendant made its employment decision upon information from plaintiff's physician that she was cancer-free and had fully recovered except for the need for minimal follow-up care.  As plaintiff's breast cancer had been fully treated, and plaintiff's need for follow-up care alone does not qualify as a disability, *see supra* note 2, plaintiff cannot demonstrate that defendant denied her employment on the basis of an impairment that substantially limited a major life activity.  Therefore, plaintiff cannot demonstrate that she satisfies the first prong of the Act's definition of disability.

**II. Record of Impairment**

Under the Rehabilitation Act, a person is also disabled if she has a record of a qualifying impairment. *See* 29 U.S.C. § 705(20)(B). A record of impairment means that a person "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).[3] The record must be one that shows "an impairment that substantially limits one or more major life activities." *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998). Furthermore, it must be a "record relied on by an employer [indicating] that the individual has or has had a substantially limiting impairment." *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999) (internal citations omitted).

Plaintiff claims that defendant relied on the following record of disability: (1) she was hospitalized for three days following her mastectomy; (2) she was limited during her one-month recovery following surgery; (3) she was hospitalized following the surgery removing her ovaries; and (4) she was unable to work for a week following her breast reconstruction

---

[3] While the persuasive authority of the EEOC's regulations is unclear, the Supreme Court has assumed without deciding that the regulations are reasonable. *See, e.g.*, *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 194 (2002); *Thompson v. Rice*, 422 F. Supp. 2d 158, 167 n.8 (D.D.C. 2006). Neither party challenges the applicability of the EEOC regulations in this case.

surgery. Pl.'s Opp. to Def.'s Mot. at 23-24. It is undisputed as well that defendant relied upon the record that plaintiff was declared cancer-free in November 2003.

The impairments reflected in this record were of a purely temporary nature, and thus are not impairments that substantially limit a major life activity. The recovery times following plaintiff's surgeries consisted only of several weeks, hardly enough to qualify as a permanent or long-term impairment. *See Toyota*, 534 U.S. at 198; *Thompson*, 422 F. Supp. 2d at 170, 174-75. Therefore, plaintiff cannot demonstrate that defendant relied upon a record of an impairment that substantially limits a major life activity, and thus cannot show that she satisfies the second prong of the Act's definition of disability.

### III. Regarded as Having an Impairment

Plaintiff claims that by denying her Class 1 medical clearance defendant "regarded" her as having a disability under the third definition of "individual with a disability." *See* 29 U.S.C. § 705(20)(B)(iii). An individual is "regarded as" disabled if her employer "mistakenly believes that [the] person has a physical impairment that substantially limits one or more major life activities" or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

Plaintiff's initial argument is that defendant regarded plaintiff as disabled based on her status as a breast cancer survivor and not on the medical follow-up treatment she required. Plaintiff's principle evidence is the initial email from Rebecca Forsman to plaintiff, which asked plaintiff for information about her diagnosis and treatment, and also stated, "there is a significant possibility that we will not be able to re-issue a Class One medical clearance." Forsman Email, Def.'s Ex. 15. Plaintiff interprets this as proof that defendant had decided to reject her candidacy as soon as she informed them of her breast cancer. The email's plain language, however, belies this assertion. Forsman's message clearly indicates that MED was seeking more information to reconsider plaintiff's clearance, but that it had not yet made a decision.

Plaintiff further argues that defendant did not actually consider her medical status because "defendant's threshold for a candidate's rejection is slight indeed." Pl.'s Opp. to Def.'s Mot. at 26. This argument does not advance plaintiff's claim. In order to be "regarded as" disabled, an employer must believe that the plaintiff had a substantially limiting physical impairment. *Sutton*, 527 U.S. at 489. If, however, the employer rejects a candidate because they have an extremely minor medical problem, then the candidate is clearly not "regarded as" disabled. *See id.*

14

Plaintiff's stronger argument is that defendant regarded plaintiff as disabled from working in an entire class of jobs due to her breast cancer treatment. Defendant admits that it was plaintiff's required treatment that prevented her from obtaining employment with the Foreign Service. Defendant argues, however, that this is not a class of jobs sufficient to demonstrate that plaintiff's impairment substantially limited her in the major life activity of working.

Both the Supreme Court and the D.C. Circuit have assumed without deciding that working is a major life activity. *See Sutton*, 527 U.S. at 492; *Duncan*, 240 F.3d at 1114 n.1; *see also Thompson*, 422 F. Supp. 2d at 171 (similarly assuming so without deciding the issue). To establish that an impairment substantially limits the ability to work, a plaintiff must "allege and prove that in his particular circumstances . . . his impairment prevents him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him." *Duncan*, 240 F.3d at 1115. To be substantially limited in working, "one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton*, 527 U.S. at 492.

In *Thompson*, the court rejected the claim that working in the Foreign Service is a broad class of jobs under *Sutton* and *Duncan*. 422 F. Supp. 2d at 171. The court noted that the plaintiff had not been excluded from a broad range of jobs in her

15

profession of financial management and human resources. *Id.* Rather, she had only been excluded from such jobs in the Foreign Service, which is a very narrow subset of the profession. *Id.* The same reasoning applies with equal force in this case.

Plaintiff responds that she is precluded from more than just Foreign Service jobs because fifty federal agencies require an MED medical clearance. Defendant clarifies, however, that only the Foreign Service requires medical clearance for worldwide availability. All other agencies only require clearance to work in a particular location, and even by MED's calculations, plaintiff would be cleared to work in 53% of locations abroad. Therefore, as in *Thompson*, jobs requiring worldwide-availability are not a broad class of jobs sufficient to show that defendant regarded plaintiff as disabled.[4] Accordingly, plaintiff cannot demonstrate that she satisfies the third prong of the Act's definition of disability.

---

[4] Plaintiff also argues that defendant regarded her as disabled because Laurence Brown, MED Director, exaggerated the potential danger to her health in his declaration to the Court. Regardless of whether Brown exaggerated these dangers, his declaration simply explains why defendant did not consider plaintiff medically fit to work in the Foreign Service, which is not sufficient to show that defendant regarded plaintiff as disabled under *Sutton* and *Duncan*. *See Thompson*, 422 F. Supp. 2d at 175-76 ("the broad interpretation advocated by plaintiff would mean all State Department employees with limited medical clearances are disabled, a result in conflict with the intent of the Rehabilitation Act").

**CONCLUSION**

The Court is not without sympathy for plaintiff's predicament. Plaintiff was obviously extremely qualified for a position with the Foreign Service, and was struck by cancer at perhaps the most inopportune time. Moreover, defendant's refusal to accept the recommendations of plaintiff's physicians or otherwise accommodate her minor medical needs appears both callous and unreasonable. Nonetheless, the Court is bound by the law governing this situation. Because plaintiff cannot demonstrate that she is disabled within the meaning of the Rehabilitation Act, defendant's motion to dismiss or, in the alternative, for summary judgment is **GRANTED**, and plaintiff's claims are **DISMISSED with prejudice**. An appropriate Order accompanies this Memorandum Opinion.

**Signed:**      **Emmet G. Sullivan**
                 **United States District Judge**
                 **March 29, 2007**